**Charlotte Renee SEMIER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–83–00224–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

July 19, 1984.

Kenneth J. McLean, Houston, for appellant.

Juliet H. Swoboda, Houston, for appellee.

Before EVANS, C.J., and DOYLE and LEVY, JJ.

## OPINION

EVANS, Chief Justice.

Appellant waived a jury trial and pleaded guilty to the offense of felony theft by worthless checks. The court assessed her punishment at five years confinement, probated, and a $500 fine. This is an appeal from an order revoking appellant's probation.

As one condition of appellant's probation, the court ordered that she report to her probation officer, in person, on the day of her plea, October 19, 1982, and thereafter on the third Friday of each month. The court's order further directed that the appellant make restitution to the complainant in the total amount of $1,476.21, such amount to be paid in $100 monthly installments beginning December 19, 1982, that she pay supervisory fees of $15 per month, and that she pay the $500 fine and court costs of $36 on November 19, 1982.

On February 22, 1983, the State filed its motion to revoke appellant's probation, alleging that she had violated the conditions of her probation by failing to report to the adult probation department on November 19, 1982, and on the third Friday of each month thereafter, that her restitution payment was $200 in arrears as of February 16, 1983, and that she had not paid any portion of the specified fine, supervisory fees, or court costs.

Prior to the hearing on the motion to revoke, appellant's mother paid the fine, court costs, and the arrearages in the supervisory fees, as well as a partial payment of $200 on the specified amount of restitution. After the hearing, the trial court found that the appellant had violated the terms of her probation in each of the respects alleged, and the court ordered her probation revoked. However, the court reduced the sentence from five years to three years confinement.

Appellant does not contest the sufficiency of the evidence to support the trial court's findings that appellant failed to report to her probation officer as directed, the first of the five alleged violations. In her brief she recognizes that when a motion to revoke probation alleges several violations, the court's order revoking probation will be affirmed if the proof of any allegation is sufficient. *Sanders v. State*, 657 S.W.2d 817 (Tex.App.—Houston [1st Dist.] 1983, no pet.); *e.g., Moore v. State*, 605 S.W.2d 924 (Tex.Crim.App.1980). Consequently, even if the evidence were insufficient to support a finding on the other allegations, the error would be harmless.

There is evidence in the record from which the trial court, as the trier of fact, could have inferred that as a result of the initial conversations between appellant and

her probation officer, appellant was led to believe that the conditions of her probation were somewhat flexible, and that because of her husband's illness and financial condition, she would not be required to report in person on the specific dates stated in the court's order. If the evidence was susceptible of that inference alone and no other conclusion could be drawn, the enforcement of the conditions of probation would likely constitute a denial of due process. *See Cardona v. State,* 665 S.W.2d 492 (Tex. Crim.App.1984). However, we have decided that this was not the only inference that can be drawn from the evidence.

█ The trial court could have decided that appellant's version of the matter was untrue, or at least inaccurate, and that the probation officer said nothing which misled appellant about the conditions of her probation. The trial judge was the sole trier of fact, and it was entirely within her province to decide the credibility of the respective witnesses and the weight to be given their testimony. *Ross v. State,* 523 S.W.2d 402 (Tex.Crim.App.1975). It is not the prerogative of the reviewing court to substitute its judgment for that of the trial court on such matters.

█ We hold that there is sufficient evidence in the record to support the trial court's finding that appellant violated the conditions of her probation by failing to report to the adult probation department as directed in the court's order. For that reason, the trial court's order must be affirmed. *Moore,* 605 S.W.2d 924.

Appellant requests that we reform the findings regarding the allegations of her failure to make payments as required based on insufficient evidence to support those findings. We decline; such action would directly contradict the holdings of the Court of Criminal Appeals requiring affirmance when the proof of any allegation is sufficient. *Sanders,* 657 S.W.2d at 820.

The judgment of the trial court is affirmed.

LEVY, J., dissenting.

Publish. Tex.R.Crim.App.P. 207.

LEVY, Justice, dissenting.

I respectfully dissent.

When the appellant was first placed on probation, she was assigned to a probation officer and directed to report to her in person, that same day. She did so report, and under the court's order, she was next required to report on November 19, 1982. On that date, she called her newly assigned probation officer and explained that her husband was ill and had been hospitalized. She also advised the probation officer that she and her husband were having serious financial difficulties. According to the appellant's testimony, the probation officer advised her that everything was "fine" and that she, the appellant, should "get back with her" in about a week. She testified that the probation officer did not express any objection to her failure to report in person, nor did the probation officer specify whether she was thereafter to report in person or by telephone. She testified that the probation officer was "very understanding" about her financial problems.

When the appellant called the probation officer about a week later, she was told by a secretary that the probation officer was not in the office. She accordingly left word with the secretary that she had called. She testified that when she did get through to the probation officer, she related that her husband was still in the hospital and that their financial "complications" were continuing. According to appellant, the probation officer responded, "Well, fine, because I won't be in my office anyway because I have to go to a funeral." Appellant testified that the next two times she called her probation officer, she was told that her officer was not there, and the second time, a secretary told her that the officer was on vacation and would be out of the office for ten days to two weeks. The appellant testified that she did not report to the probation officer in December, but that she did speak to the officer before the end of the year. At that time, the officer indicated to her that her account needed to be cleared up by the first of the year. The

appellant explained why she did not report in January, 1983, as follows:

Q: All right. You were due to report to her on the 19th of January. Did you report at that time?

A: No, I did not.

Q: Did you call her?

A: No, I did not.

Q: Why didn't you call her or report to her?

A: I didn't call because my husband had been in and out of the hospital three different times and whenever I would phone she was so nice to me, you know, and understanding—and excuse me. I felt as though so many things were going on that it was hard for me to understand that—we had hospital bills and other things that we couldn't afford to pay, and when I first went to Court I had asked to have the restitution not at $100 but $35 a month and they said it was impossible because it was already on paper. But that's why I didn't call. You know, I feel as though, not getting off of everything, but it wasn't her fault. It was more or less my fault because I should have confided in her and called her again and trusted her just two more times.

The State filed its motion to revoke appellant's probation in February, 1983, and appellant was arrested in early March, 1983. The record indicates that she remained in jail from the time of her arrest until the date of her hearing on March 23, 1983.

The probation officer's testimony confirms that appellant's first report date was mutually postponed. The probation officer testified that she did not recall hearing from the appellant after such postponement, and that on December 10, 1982, she sent a letter addressed to appellant, instructing her to report at the office on December 20, 1982. The probation officer did not know whether the appellant ever received the letter, but it was never returned to her office. Both the appellant and her husband testified that they had been having trouble with their mail delivery and had not received the letter. The probation officer never visited or called the appellant to determine what was "going on" with the appellant, and she testified that she just assumed that appellant had received the letter.

The record further indicates that at the time of the hearing on the State's motion to revoke appellant's probation, appellant was 22 years of age. Prior to the hearing, her mother paid the fine, court costs, and the arrearages in the supervisory fees, as well as a partial payment of $200.00 on the specified amount of restitution.

The State contends that the trial court's judgment should be affirmed because appellant does not challenge the finding that she failed to report and because that finding is supported by a preponderance of the evidence. The State urges the established rule that a trial court's order revoking probation must be affirmed if there is sufficient proof of any single alleged violation. *Moore v. State*, 605 S.W.2d 924 (Tex.Crim. App.1980); *Sanders v. State*, 657 S.W.2d 817 (Tex.App.—Houston [1st Dist.] 1983 no pet.).

I do not think that the general rule argued by the State and adopted by the majority is applicable to the case at bar. Here, the great weight of the evidence shows that the probation officer's course of conduct in dealing with appellant very likely led her to believe that she need not stringently comply with the conditions of her probation and that this resulted in appellant being not sufficiently apprised of how strictly she was to comply with such conditions. The record strongly suggests that because of the initial conversations with her probation officer, the appellant understood the conditions of her probation to be flexible, and believed that strict compliance was excused in view of her husband's illness and financial problems. Thus, under the circumstances presented, the state itself bears a share of the responsibility for the appellant's non-compliance with the terms of her probation, and I conclude that the enforcement of such con-

ditions would, under such circumstances, constitute a denial of Due Process. See *Cardona v. State,* 665 S.W.2d 492 (Tex.Crim.App.1984). The great weight and preponderance of the evidence in the record reflects that appellant was not financially capable of making the payments as required and that appellant proved her inability to pay. Tex.Code Crim.Pro.Ann. Art. 42.12 sec. 8(c) (Vernon 1979). Moreover, the trial court's order cannot be sustained on the basis of those alleged violations because the State did not prove that appellant intentionally failed to make the required payments. *Stanfield v. State,* 638 S.W.2d 127 (Tex.App.—Fort Worth 1982, pet. granted).

It is firmly established that the burden of proof in determining questions of sufficiency of the evidence in probation revocation cases is by preponderance of the evidence, *Anderson v. State,* 621 S.W.2d 805 (Tex.Crim.App.1981), and that our review of an order revoking probation is confined to whether the trial court abused its discretion. *Caddell v. State,* 605 S.W.2d 275 (Tex.Crim.App.1980); *Cardona v. State, supra.*

Reliance on the discretion of the trial court entrusted with the application of appropriate standards for the revocation of probation, however, is not in itself an investiture of arbitrary power offensive to due process. In this sense, "Due Process" conveys neither rigid nor formal nor narrow requirements, but is a compendious expression for all those rights which the courts must enforce because they are basic to our free society. Due Process is not confined in its scope to the particular forms in which rights have heretofore been found to have been curtailed for want of procedural fairness. Due Process, Mr. Justice Frankfurter said, is perhaps the most majestic concept in our whole constitutional system. While it contains the garnered wisdom of the past in issuing fundamental justice, it is also a living principle, not confined to past instances. *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 173–4, 71 S.Ct. 624, 649–50, 95 L.Ed. 817 (1951). When the State has failed to meet its burden of proof, the trial court abuses its discretion in issuing an order to revoke probation, *Walkovak v. State,* 576 S.W.2d 643 (Tex.Crim.App.1979); *Cardona v. State, supra,* and thereby violates the probationer's overriding right to "Due Process". The trial judge is certainly not immune from the historic requirements of fairness merely because she acts, however conscientiously, in the name of justice.

I would hold that the appellant was not afforded the rudiments of due process in that the evidence failed to show that the probation officer gave sufficiently clear and unambiguous instructions to the appellant so as to constitute adequate notice. *Caddell, supra; Cardona, supra.* It is upon the alleged disregard of this notice alone that the State seeks to imprison this appellant.

I would reverse and remand this cause. Publish. Tex.R.Crim.P. 207.